AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

MAY 12 2023

U.S. DISTRICT COURT
EVANSVILLE, INDIANA

| | |
|---|---|
| United States of America<br>v.<br><br>JEREMIAL LEACH<br><br><br>*Defendant(s)* | )<br>)<br>) Case No. 3:23-mj-28-MJD<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  June 24, 2022 and October 11, 2022  in the county of  Vanderburgh  in the
 Southern  District of  Indiana , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) | Distribution of a Mixture or Substance Containing a Detectable Amount of Fentanyl Resulting in Death |
| 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) | Distribution of a Mixture or Substance Containing a Detectable Amount of Fentanyl |
| 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) | Distribution of a Mixture or Substance Containing a Detectable Amount of Fentanyl |
| 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) | Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Fentanyl |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Cordell Allen, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/12/2023, 10:55 am

_____
*Judge's signature*

City and state:  Evansville, Indiana           Matthew P. Brookman, U.S. Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT FOR JEREMIAL LEACH

### INTRODUCTION

I, Cordell Allen, after being duly sworn, depose and state as follows:

1. Your Affiant is "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. Your Affiant is a Special Agent (hereinafter "SA") with the United States Drug Enforcement Administration (hereinafter "DEA") and has been so assigned since September 10, 2021. Prior to assignment with the DEA, your Affiant was a sworn law enforcement officer with the Louisville Metro Police Department in Louisville, Kentucky, from June 2010 to April 2021. In connection with my official DEA duties, your Affiant investigates criminal violations of state and federal narcotics laws, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, and 848. Your Affiant has received specialized training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. Your Affiant has testified in grand jury indictments, evidence suppression hearings, and been involved in other proceedings and prosecutions for violations of controlled substance laws. Your Affiant also has been involved in various types of surveillance, and in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking. Your Affiant is also familiar with and has participated in the use of pen registers and undercover operations. Your Affiant has received training in investigations and has

participated in investigations involving the interception of both wire and electronic communication devices. Your Affiant is familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions. Your Affiant has been involved in drug investigations concerning offenses resulting in death or serious bodily injury.

3. Your Affiant's knowledge of the facts and circumstances contained within this Affidavit is based on my personal investigation, as well as reports made to me by other law enforcement agencies, including agents of the DEA and local city and/or county law enforcement, as well as information obtained from governmental institutions, information obtained from non-governmental institutions, and various other reports obtained under order or subpoena. This Affidavit does not set forth every fact discerned throughout the investigation; rather, it contains a summary of the investigation to date and sets forth only those facts that your Affiant believes necessary to establish probable cause for the proposed arrest warrant and complaint.

## ALLEGED OFFENSES

4. This investigation concerns alleged violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), related to the distribution of fentanyl, including distribution resulting in death, and the possession of fentanyl with intent to distribute. Specifically, Title 21, United States Code, Section 841(a)(1) prohibits the manufacture, distribution, or dispensation of a controlled substance, as well as the possession with intent to distribute a controlled substance, and Title 21, United States Code, Section 841(b)(1)(C) proscribes penalties where "death or serious bodily injury results from the use of such substance . . . ." Fentanyl is categorized as a "controlled substance" under Title 21, United States Code, Schedule II(b)(6).

## PROBABLE CAUSE

5. Prior to June 2022, investigators with the Evansville-Vanderburgh County Drug Task Force (hereinafter "EVCDTF") received information that an unknown individual with the alias "Mel" was utilizing Snapchat to sell fentanyl-laced counterfeit pills in Evansville. Law enforcement used an undercover Snapchat account to follow "Mel's" account, observing "stories" advertising the sale of marijuana, blue pills, and firearms. The owner of the account occasionally posted "stories" depicting his own face, allowing law enforcement to identify him as Jeremial LEACH. Law enforcement further identified LEACH's public Facebook account, which displayed his name as "Dblock Mel."

6. On June 25, 2022, at approximately 12:11 a.m., officers with the Evansville Police Department (hereinafter "EPD") and the Evansville Fire Department (hereinafter "EFD") responded to a residence on Wedeking Avenue in reference to the overdose of an adult female, subsequently identified as H.E.

7. Upon arrival, EFD personnel rendered aid to H.E. while law enforcement, including EPD Officer Hardin, spoke with H.E.'s housemate, Elisabeth Duncan. Duncan stated that approximately three minutes before law enforcement arrived, H.E. crushed and snorted a blue pill. Shortly thereafter, H.E. lost consciousness and her lips turned blue. EFD personnel ultimately revived H.E. after administering her naloxone, and H.E. was transported to Deaconess Midtown Hospital.

8. Later the same date, at approximately 10:55 a.m., EPD officers again responded to the residence on Wedeking Avenue after Duncan's mother called 911 to report that she found Duncan deceased. Officers arrived on scene and located Duncan on the living room couch. Law enforcement then spoke with Duncan's brother, who also lived in that residence. Duncan's brother

3

stated that he had arrived home around 11:00 p.m. the previous evening and had learned that H.E. overdosed. He confirmed that Duncan had also taken narcotics, but she had not advised medical personnel of that fact. He indicated that he kept on eye on Duncan until he fell asleep between 2:00 a.m. and 3:00 a.m. He stated that when he woke up the following morning, he passed Duncan on his way to get food from the kitchen, but he thought that Duncan was just asleep. A short time later, he heard screaming from the living room and found his mother distraught after discovering Duncan deceased.

9. Personnel with the Vanderburgh County Coroner's Office (hereinafter "VCCO") took custody of Duncan's body and transported it to the morgue. While searching the body, VCCO staff located inside Duncan's bra a tightly rolled one dollar bill and a folded five dollar bill containing a crushed blue pill. Detective Breivogel responded to the morgue and took possession of that evidence. Based on its appearance, law enforcement believed the blue pill was a crushed M30 counterfeit oxycodone pill containing fentanyl.

10. Law enforcement subsequently obtained a state warrant to search Duncan's cellular telephone. Sergeant Thiry reviewed the extracted data, observing that on June 24, 2022, at approximately 10:36 p.m., Duncan contacted the number (XXX) XXX-2948 (hereinafter "LEACH TELEPHONE 1"), which was saved in her phone as "Mel 30." Based on their surveillance of LEACH's Snapchat account and social media, law enforcement knew "Mel" to be an alias associated with LEACH. Sergeant Thiry observed the following conversation:

ED: (10:36:39 p.m.) Hey can I shop?

JL: (10:36:55 p.m.) Who is this

ED: (10:37:17 p.m.) Elisabeth Duncan on Snapchat

ED: (10:37:20 p.m.) Shopped a couple times

4

JL: (10:45:44 p.m.) How much u got

ED: (10:46:06 p.m.) Can I get 3 for 30 a piece

JL: (10:46:28 p.m.) Weed?

ED: (10:46:34 p.m.) The blues

JL: (10:46:45 p.m.) U got 90?

ED: (10:46:48 p.m.) Yessir

JL: (10:46:56 p.m.) Slide rn

ED: (10:47:15 p.m.) What's the addy again

JL: (10:47:28 p.m.) 1614 Shanklin Ave

ED: (11:05:15 p.m.) Walking up

11. Based on my training, experience, and knowledge of this investigation, your Affiant believes that this conversation entailed Duncan arranging the purchase from LEACH of three fentanyl-laced counterfeit oxycodone pills in exchange for $90. After Duncan initially inquired about purchasing narcotics, LEACH asked Duncan to identify herself. Duncan then provided her full name to LEACH and indicated that she had purchased from LEACH on prior occasions. LEACH asked Duncan about her location and whether she was "mobile," and Duncan replied that she was at her sister's house but could reach LEACH in fifteen minutes. Duncan then ordered "3 for 30 a piece." When LEACH asked if Duncan wanted "weed," Duncan clarified that she wanted "the blues." LEACH then asked Duncan whether she had "90," which she confirmed. At 10:46 p.m., LEACH directed Duncan to "slide rn." Duncan then asked for LEACH's address, and he responded, "1614 Shanklin Ave." At 11:05 p.m., Duncan wrote, "Walking up."

12. While reviewing the data extracted from Duncan's telephone, law enforcement observed that the telephone logged the latitude and longitude of Duncan's route to and from

5

LEACH's residence, and that Duncan utilized her telephone's GPS application for navigation during that trip. Detective McCormick then assisted Sergeant Thiry with plotting Duncan's location and path of travel. Because the GPS application provided coordinates every couple of seconds, investigators could reconstruct Duncan's movements. That data indicated that when Duncan first contacted LEACH to purchase pills, her telephone was located at her Wedeking Avenue address. The telephone then traveled to 1614 Shanklin Avenue after LEACH provided Duncan his address. When Duncan wrote, "walking up," the data identified the telephone's location as 1614 Shanklin Avenue, where the telephone remained for approximately two minutes before traveling back to Duncan's residence, arriving at approximately 11:21 p.m. A short time thereafter, at approximately 11:38 p.m., medical units and law enforcement were requested to respond to Duncan's residence regarding the overdose of her housemate, H.E. The GPS application indicated no travel following Duncan's arrival home, and the application listed 1614 Shanklin Avenue as its most recent destination.

13.  In further reviewing Duncan's telephone extraction, Sergeant Thiry observed multiple Snapchat contacts that appeared associated with LEACH, including one with the display name "Dblock Mel" and the username "dlockm2022," and another with the display name "mel" and the username "dblock_mel."

14.  Your Affiant subsequently received federal judicial authorization to obtain historical cell site location information for Duncan's telephone and LEACH TELEPHONE 1. Upon receiving the return and reviewing the data, your Affiant observed that on June 24, 2022, between 11:01 p.m. and 11:58 p.m., the telephones of LEACH and Duncan were within a three-mile radius of each other and of LEACH's residence. Your Affiant believes this data corroborates the timeline of Duncan's overdose.

15. On August 2, 2022, after performing an autopsy, forensic pathologist Christopher Kiefer, M.D., rendered an opinion identifying Duncan's cause of death as fentanyl intoxication. The opinion noted that toxicological analysis revealed the presence of fentanyl, norfentanyl, and 4-ANPP inside Duncan's bloodstream.

16. On August 20, 2022, at approximately 4:15 p.m., EPD officers were dispatched to a restaurant located on Hirschland Road concerning an overdose. Upon arrival, the officers located an adult female, subsequently identified as R.M., sitting on the ground in the parking lot of the restaurant. The officers observed that R.M. was not alert and began to lose consciousness. An officer then administered 4 mg of naloxone into R.M.'s nostril. A short time later, R.M. began to regain consciousness and advised EFD personnel that she had taken 30 mg of oxycodone. J.M., the daughter of R.M., was also present and advised that she believed R.M. overdosed on Lortabs.

17. R.M. was transported to Deaconess Midtown Hospital a short time later and treated for the overdose. While at the hospital, R.M. advised medical personnel that she ingested 30 mg of oxycodone while sitting in her car after dropping her daughter off at work. R.M. indicated that she began to feel hot and lightheaded soon after the ingestion, and she then exited her vehicle, dropped to her knees, and may have lost consciousness.

18. On August 22, 2022, R.M. met with EVCDTF Detective Mansfield and stated that on the day of her overdose, she purchased four regular Percocet 30's from 1614 Shanklin Avenue and overdosed because they contained fentanyl. R.M. also stated that a black male met her outside of 1614 Shanklin Avenue and sold the pills to her for $30 each.

19. On September 27, 2022, EVCDTF Detectives Barnes and Knight spoke with both R.M. and J.M. R.M. stated that she drove with J.M. to 1614 Shanklin Avenue, where they met with a black male to purchase four blue Percocet 30's for $30 apiece. J.M. advised law

7

enforcement that she reached out to a dealer, known as "Mel," via SMS/MMS message to acquire the pills her mother ingested. Based on this alias, law enforcement believed "Mel" to be LEACH. J.M. advised investigators that she utilized her telephone to contact "Mel" at LEACH TELEPHONE 1 and at (XXX) XXX-3653 (hereinafter "LEACH TELEPHONE 2"). J.M. provided investigators with screen shots of her text message conversations with "Mel" that occurred between August 20 and August 26, 2022. In those conversations, J.M. communicated with "Mel" by sending messages to both LEACH TELEPHONE 1 and LEACH TELEPHONE 2. A portion of the conversations went as follows:

**J.M. to Leach Telephone 2**

August 20, 2022

    JM:    (2:07 p.m.) Aye kinzie told me to hit you up

    JL:    Wyn

    JM:    4 Perc 30

    JL:    100

    JM:    Bet wya

    JL:    8122702948 Txt

**J.M. to Leach Telephone 1**

August 20, 2022

    JM:    (2:37 p.m.) Hey

    JL:    U in Evansville?

    JM:    Yea

    JL:    Meet me at 1614 Shanklin ave

**Leach Telephone 2 to J.M.**

August 22, 2022

JL:   (2:17 p.m.) Need

JM:   Definitely not. My mother overdosed the other night your shit is laced with fentanyl she literally fucking died she's lucky to be alive right now.

August 26, 2022

JL:   (10:55 a.m.) R u cool

JM:   I'm fine but I'm not fucking with nothing no more

JL:   Txt my 8122702948

20.   Based on my training, experience, and knowledge of this investigation, your Affiant believes the first conversation indicated that J.M. ordered four 30 mg Percocet tablets from LEACH on behalf of her mother, R.M., in exchange for $100. During that initial conversation, LEACH directed J.M. to contact him on his alternate telephone. The second conversation indicated that LEACH instructed J.M. to meet him at 1614 Shanklin Avenue in Evansville. The third and fourth conversation indicated that J.M. advised LEACH that her mother, R.M., had overdosed from the pills they purchased, which had contained fentanyl. LEACH then responded by expressing a willingness to continue selling the pills, providing J.M. the number for his alternate telephone.

21.   A photograph lineup including an image of LEACH was presented to R.M. and J.M., both of whom positively identified LEACH as the individual who sold them the pills.

22.   Your Affiant subsequently received federal judicial authorization to obtain historical cell site location information for R.M.'s telephone, J.M.'s telephone, and LEACH TELEPHONE 1. Upon receiving the return and reviewing the data, your Affiant observed that on August 20, 2022, at approximately 1:40 p.m., the telephones of LEACH and R.M. communicated

with the same cellular tower and were within a three-mile radius of each other and of LEACH's residence. Your Affiant believes this data corroborates the timeline of R.M.'s overdose.

23. On October 5, 2022, EVCDTF Detectives Mansfield, Barnes, and Knight were monitoring a Snapchat account utilized by LEACH with the display name "Popout Mel" and the username "popoutmel22." They observed LEACH post an image of himself tagging his location as Evansville. At the top of the image was a blue circle emoji stamped with the letter "M." An arrow protruded from that emoji towards a second emoji of a cellular telephone. Your Affiant understands this image as LEACH encouraging his customers to contact him to purchase blue fentanyl-laced counterfeit M30 oxycodone pills. Law enforcement further observed another post in which LEACH advertised the sale of a "9," or 9mm pistol. Law enforcement subsequently obtained a state warrant to search this Snapchat account. Your Affiant reviewed the warrant return and located LEACH's October 5 post advertising the sale of pills, observing that the message was sent to approximately 400 recipients.

24. On October 7, 2022, at approximately 2:14 p.m., EPD officers responded to a location on SE Riverside Drive after receiving a call from a civilian witness regarding a single vehicle accident in that area. The witness advised that the driver of the vehicle, a juvenile male subsequently identified as C.O., was no longer coherent. EFD personnel arrived on scene and spoke with the witness, who stated that C.O. had been "up and talking" before sitting down in the vehicle and losing consciousness. The EFD personnel attempted to wake C.O. with a sternum rub. After that failed, they administered naloxone to C.O., who became responsive.

25. EPD Officers Miles and Helfert subsequently arrived on scene and observed that C.O. was unsteady on his feet, leaning on his vehicle while speaking with personnel from American Medical Response (hereinafter "AMR"), and exhibited slow and slurred speech. Law

enforcement determined that C.O. had been traveling south on SE Riverside Drive when he drove across the oncoming side of traffic, over a sidewalk, and into a vehicle parked in a driveway on SE Riverside Drive. Law enforcement then secured C.O. to a cot by handcuffing his left wrist. C.O. admitted to medical personnel that he took two Percocets 7.5 mg pills approximately forty-five minutes to one hour before the vehicle crash.

26. C.O. was read the Indiana Implied Consent declaration by law enforcement and agreed to submit to a chemical test, after which he was transported to Deaconess Midtown Hospital. While at the hospital, C.O. made an unprovoked statement indicating that he crashed his vehicle after losing consciousness from consuming two 7.5 mg Percocet pills earlier in the day. C.O. speculated that the pills may have been pressed fentanyl pills, rather than actual Percocet pills. C.O. was also administered a chemical test of his blood.

27. Detective Barnes arrived at the hospital after C.O. requested to speak with a narcotics detective. Detective Barnes met with C.O. and his mother, both of whom were read a *Miranda* warning and agreed for C.O. to speak with law enforcement. After his mother stepped out of the room, C.O. advised Detective Barnes that he had purchased two "Percocet 7.5s" or "Percocet 10s" from "Mel" earlier that day. C.O. stated that he contacted "Mel" via Snapchat or on his telephone number. C.O. then showed Detective Barnes his telephone, identifying "Mel's" Snapchat as "popoutmel22" and "Mel's" number as LEACH TELEPHONE 1. C.O. showed Detective Barnes a call log indicating that C.O. had contacted "Mel." C.O. further stated that he had also purchased "blues," or oxycodone pills, from "Mel" in the past.

28. Detective Barnes observed that in the Snapchat messages between C.O. and "Mel," C.O. had saved the address of 1614 Shanklin Avenue. C.O. stated that this address belonged to "Mel," and it was the address at which C.O. acquired the two pills earlier that day. In the messages,

at approximately 2:23 p.m., C.O. advised "Mel" that he was at "Mel's" address. C.O. advised Detective Barnes that he had a telephone conversation with "Mel" concerning what pills to purchase. C.O. indicated that he purchased two pills for approximately fifteen dollars and had ingested the pills prior to leaving "Mel's" address. C.O. described "Mel" as a short, heavy-set black male with ear-length dreadlocks. C.O. stated that he had a narcotic addiction and had overdosed on fentanyl in the past. C.O. indicated that he had recently left a rehabilitation facility and had relapsed that day.

29. Your Affiant subsequently received federal judicial authorization to obtain historical cell site location information for C.O.'s telephone and LEACH TELEPHONE 1. Upon receiving the return and reviewing the data, your Affiant observed that on October 7, 2022, between 1:28 p.m. and 2:23 p.m., the telephones of LEACH and C.O. were within a three-mile radius of each other and of LEACH's residence. Your Affiant believes this data corroborates the timeline of C.O.'s overdose.

30. On October 11, 2022, investigators with the EVCDTF established surveillance at 1614 Shanklin Avenue. At approximately 12:20 p.m., Detective Barnes observed a black male knock on the front door of the location and conduct a hand-to-hand transaction, subsequently leaving the area in a dark burgundy/purple Kia Optima. At the same time, investigators observed another white male walk up onto the porch of 1614 Shanklin Avenue and meet with LEACH for a short duration before leaving in a gold Hyundai Tucson. Shortly thereafter, law enforcement stopped both vehicles after observing traffic violations.

31. During the stop of the burgundy Kia Optima, investigators identified Trinity Smith as the driver and Derion Roach as the backseat passenger. Investigators received consent to search the vehicle and located three blue pills marked "M30" inside the vehicle.

32. During the stop of the gold Hyundai Tucson, investigators found the vehicle occupied by two juveniles. After the driver admitted to the presence of pills inside the vehicle, investigators conducted a probable cause search and located six blue pills marked "M30." One of the juveniles was transported to EPD headquarters. Detective Barnes met with the juvenile and his mother and read the juvenile his *Miranda* rights in the presence of his mother. Both parties then signed an advisement of rights form and requested to speak with Detective Barnes. The juvenile stated that his dealer's name was "Mel" and that he contacted "Mel" at LEACH TELEPHONE 1. The juvenile also stated that he asked "Mel" for six "blues" for $140.

33. On the same date, at approximately 3:00 p.m., Detective Knight applied for and was granted a state warrant to search 1614 Shanklin Avenue. During the execution of the search warrant, LEACH exited the front door of 1614 Shanklin Avenue and was taken into custody. Some of the items located and seized during the search included: 33 blue pills marked "M30," located in the master bedroom; a digital scale, located in the living room entertainment center; a Glock 19 9mm pistol, bearing serial number ABPU807, located on the living room entertainment center; a Diamondback DB9 9mm pistol, bearing serial number YL1518, located in the master bedroom closet safe; four telephones, including LEACH TELEPHONE 1; and approximately $1,843 in United States currency.

34. The pills seized during the two traffic stops and from LEACH's residence were subsequently submitted for laboratory analysis and tested positive for the presence of fentanyl. Based on my training, experience, and knowledge of this investigation, your Affiant believes the quantity of pills seized from the residence was consistent with distribution and inconsistent with personal use.

35. As the search warrant was being executed at 1614 Shanklin Avenue, LEACH's girlfriend, subsequently identified as Taya Egan, arrived. Detective Patterson read Egan her *Miranda* rights, and Egan agreed to speak with law enforcement. Egan told investigators that she was present in the house when LEACH sold the pills earlier in the day and that LEACH lived at that location. A check through a local law enforcement database showed that 1614 Shanklin Avenue was also the residential address of Egan. Egan then agreed to show Detective Knight her most recent text messages and Snapchat messages on her cellular telephone. During a review of Egan's telephone, Detective Knight observed that Egan's most recent Snapchat message was to an individual named "Trinity," believed to be Trinity Smith, who was stopped by law enforcement earlier in the day.

36. Egan's telephone was subsequently seized by law enforcement, and a state warrant to search the telephone was obtained. During a review of the telephone's extraction, your Affiant observed that Egan's most recent Snapchat message was on October 11, 2022, to username "trinfsmith27." A portion of the Snapchat communication went as follows:

| Trinfsmith27: | (08:01:24 a.m.) Hey you up? |
| Trinfsmith27: | (08:33:55 a.m.) We have 85 cashapp and 11$ cash but if we can't use cashapp we can get the cash off just let us know |
| Taya.egan59: | (11:48:44 a.m.) no I wasn't awake |
| Trinfsmith27: | (12:26:36 p.m.) We here |

37. Based on my training, experience, and knowledge of this investigation, your Affiant believes this conversation entailed Smith advising Egan that she and Derion Roach had $85 on Cash App and $11 in cash to pay for fentanyl-laced counterfeit oxycodone pills, but that they could acquire more cash if needed.

14

38.     Detective Barnes and Knight subsequently provided LEACH a *Miranda* warning and interviewed him. LEACH admitted that he knew why he was being interviewed, and he took ownership for dealing pills. LEACH admitted that he acquired 50 pills at a time for $10 per pill. LEACH stated that he only sold the pills; he did not use them himself. LEACH indicated that he started selling pills as a way to make some quick cash. LEACH stated that he last resupplied the previous night. Although LEACH denied knowing that his pills contained fentanyl, he admitted that he knew how dangerous the pills were and recognized that the pills could cause an overdose. When Detective Knight confronted LEACH with the fact that LEACH's customers were upset because they believed they were purchasing legitimate oxycodone pills instead of fentanyl-laced pills, LEACH responded that his customers knew the risks of buying and using those pills. LEACH stated that he also knew the risks and could have stopped dealing at any time, but he chose to continue to deal pills to make easy money. When asked about the firearms located inside his residence, LEACH admitted that he bought those firearms for his own protection after being shot twice.

## CONCLUSION

39.     Based on your Affiant's training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that **JEREMIAL LEACH** committed the offenses of Distribution of Fentanyl Resulting in Death or Serious Bodily Injury, Distribution of Fentanyl, and Possession with Intent to Distribute Fentanyl, all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## REQUEST FOR SEALING

40. It is further respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this complaint, affidavit, and arrest warrant. Sealing is necessary to protect the identity of the victim and witnesses, and because release of the information in the complaint and affidavit may have a negative impact on this continuing investigation and may jeopardize its effectiveness.

AFFIANT FURTHER SAYETH NOT.

_____
Cordell Allen, Special Agent
Drug Enforcement Administration

Sworn to before me this 12th day of May, 2023.

_____
Matthew P. Brookman
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF INDIANA